16A58882E1

No. _____

Date Summons Issued and Filed

2/26/2016

/s/ Michelle Cheek

_____
Deputy Clerk

Deposit Paid $ _____

[] **ANSWER**

[] **JURY**

# STATE COURT OF DEKALB COUNTY
## GEORGIA, DEKALB COUNTY

### SUMMONS

Ishaq Majeed

1230 Peachtree Street NE, Suite 3750, Atlanta, GA 3030.
(Plaintiff's name and address)

vs.

Atlanta Veteran Affairs Medical Center, Satynarayan Basired
Amber J. Willis, John Doe (s)(1-2), Jane Doe(s)(1-2)
1700 Clairmont Road, Decatur, GA 30033
(Defendant's name and address)

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of State Court, Suite 230, 2nd Floor, Administrative Tower, DeKalb County Courthouse, 556 N. McDonough Street, Decatur, Georgia 30030 and serve upon the plaintiff's attorney, to wit:

Mahdi Abdur-Rahman
(Name)

1230 Peachtree Street NE, Ste 3750, Atlanta, GA 30309
(Address)

(470) 225-8642                                    728252
(Phone Number)                                    (Georgia Bar No.)

an **ANSWER** to the complaint which is herewith served upon you, within thirty (30) days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. (Plus cost of this action.)

_____

Defendant's Attorney _____

Third Party Attorney _____

Address _____

Address _____

Phone No. _____ Georgia Bar No. _____

Phone No. _____ Georgia Bar No. _____

### TYPE OF SUIT

☐ Account
☐ Contract
☐ Note
☐ Trover

☐ Personal Injury
☐ Medical Malpractice
☐ Legal Malpractice
☐ Product Liability
☐ Other

Principal      $ _____

Interest       $ _____

Atty Fees      $ _____

☐ Transferred From _____

**DEFENDANT'S EXHIBIT**
1
PENGAD 800-631-6989

**(Attach BLUE to Original and WHITE to Service Copy of complaint)**

summons1-2008rev

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| ISHAQ MAJEED, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION FILE** |
| | ) | 16A58882E1 |
| v. | ) | NO. _____ |
| | ) | |
| ATLANTA VETERAN AFFAIRS | ) | |
| MEDICAL CENTER, | ) | |
| SATYANARAYANA | ) | |
| BASIREDDY, M.D., AMBER J. | ) | **JURY TRIAL DEMANDED** |
| WILLIS, JOHN DOE(S) (1-2), | ) | |
| JANE DOE(S) (1-2), | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR MEDICAL MALPRACTICE, NEGLIGENCE, RESPONDEAT SUPERIOR AND DAMAGES

**COMES NOW** Plaintiff, Ishaq Majeed, ("Mr. Majeed"), by and through his counsel of record, The Law Office of Mahdi Abdur-Rahman, LLC, and files this Plaintiff's Original Complaint for Medical Malpractice, Negligence, Respondeat Superior and Damages against the above-named Defendants. Moreover, Plaintiff reserves the right to amend this Complaint to add additional claims and Defendants, to include, but not limited to, an EMTALA claim for relief against the above-named Defendants. In regards to the current claims, Plaintiff shows this Honorable Court and Jury the following:

### INTRODUCTION

1.

Plaintiff's claims arise out of a claim for medical malpractice against Defendants for Defendants' failure to properly care for and treat Plaintiff, Mr. Majeed.

## PARTIES, JURISDICTION AND VENUE

2.

Plaintiff incorporates and re-alleges paragraph one (1) above, as if fully set out herein.

3.

At all times material hereto, it is believed that all of the facts and circumstances giving rise to this Complaint occurred in Decatur, Dekalb County, Georgia.

4.

Plaintiff, Mr. Majeed, is a citizen and resident of Atlanta, Fulton County, Georgia.

5.

Defendant, Atlanta Veteran Affairs Medical Center ("Defendant Atlanta VAMC"), is a hospital doing business in Dekalb County, Georgia, and is subject to the venue and jurisdiction of this Court. Defendant Atlanta VAMC can be served with this lawsuit by serving its registered agent, located at 1700 Clairmont Road, Decatur, GA, 30033.

6.

Defendant, Dr. Satyanarayana Basireddy ("Defendant Basireddy"), is a medical doctor specializing in Emergency Medicine, and engaged in the practice of medicine at Atlanta Veteran Affairs Medical Center, located at 1700 Clairmont Road, Decatur, GA, 30033. Defendant Basirreddy may be served at either this location, or at his private practice, located at 107 Colony Square Drive, #800, Cumming, GA 30040.

7.

Defendant Amber J. Willis, RN ("Defendant Willis"), is a Registered Nurse, and engaged in the practice of medicine at Atlanta Veteran Affairs Medical Center, located at 1700 Clairmont Road, Decatur, GA, 30033. Defendant Willis may be served at this location.

8.

Defendants, John Doe(s) (1-2), and Jane Doe(s) (1-2) identities are unknown to Plaintiff at the present time. They may have committed tortious acts in Dekalb County and are subject to the jurisdiction of this Court. They will be served as soon as their identities are revealed through discovery.

9.

Jurisdiction is proper in the State of Georgia for all Defendants, as each named Defendant is either a resident of the State of Georgia and/or corporation authorized to do business within the State of Georgia.

10.

Venue is proper in Dekalb County, Georgia pursuant to, *inter alia*, Art. 6 Sec. 2, Par. 4 of the Constitution of the State of Georgia, as at least one (1) named Defendant is a resident of and/or authorized to do business in Dekalb County, Georgia and the remaining Defendants are joint tortfeasors with said Defendant.

## FACTUAL ALLEGATIONS

11.

Plaintiff incorporates and re-alleges paragraphs one (1) through ten (10), as if fully set out herein.

12.

On or about February 28, 2014, at approximately 6:00 a.m., Mr. Majeed presented to Defendant Atlanta VAMC with complaints of burning chest pain.

13.

At approximately 6:29 a.m., an Electrocardiogram (EKG) was performed on Mr. Majeed.

Upon review of the EKG, Defendant Basireddy diagnosed Mr. Majeed with Acute Inferior and

Anterior Wall ST-Elevation Myocardial Infarction (STEMI), and notified the Cardiology fellow

on call.

14.

At approximately 6:35 a.m., the Cardiology fellow advised Defendant Basireddy to

transfer Mr. Majeed to Emory Hospital, as Defendant Atlanta VAMC's Catheterization

Laboratory would not open until 8:00 a.m. At or about the same time, Mr. Majeed was

transferred to Emergency Room 5, and placed on cardiac monitoring, while his vitals were

assessed.

15.

At approximately 6:40 a.m., Defendant Basireddy contacted the Emory Hospital transfer

service to arrange transfer of the patient, Mr. Majeed. At or about the same time, an Intermittent

Needle Therapy (IV/INT) was inserted.

16.

At approximately 6:50 a.m., Defendant Willis administered three (3) 0.4 mg doses of

NTG (Nitroglycerin), and one (1) three hundred twenty-five (325) mg dose of Aspirin (ASA) to

Mr. Majeed.

17.

At approximately 6:55 a.m., Defendant Basireddy contacted Dr. Michael McDaniel, the

Cardiology Attending Physician at Emory Hospital, and Dr. McDaniel accepted Mr. Majeed as a

patient. Dr. McDaniel instructed Defendant Basireddy to administer six hundred (600) mg of Plavix (Clopidogrel).

18.

At approximately 7:00 a.m., Defendant Willis initiated 12.44 units of Heparin drip as ordered.

19.

At approximately 7:10 a.m., Defendant Willis completed a second EKG at Mr. Majeed's bedside, and Defendant Basireddy reviewed the results.

20.

At approximately 7:13 a.m., Defendant Willis administered two (2) mg of Morphine, as Mr. Majeed continued to complain of chest pain prior transfer.

21.

At approximately 7:30 a.m., Defendant Willis contacted Nancy Sarpong, RN, at Emory Hospital, and indicated that Mr. Majeed's expected time of arrival was fifteen (15) minutes.

22.

At approximately 7:40 a.m., Mr. Majeed complained of increased burning in his chest, and Defendant Willis administered a second two (2) mg dose of Morphine, as ordered by Defendant Basireddy.

23.

At approximately 7:48 a.m., Emory transport arrived, and transported Mr. Majeed to Emory Hospital.

24.

At approximately 8:13 a.m., Dr. John Douglas, Jr. performed a Percutaneous Coronary Intervention (PCI) with Drug-Eluting Stent (DES) to the mid Left Anterior Descending (LAD) artery. After a successful operation, Mr. Majeed was transferred to the Critical Care Unit (CCU).

25.

At approximately 5:00 p.m., Mr. Majeed began to experience severe chest pain, and was taken back to the Catheterization Laboratory, where Mr. Majeed was diagnosed with Acute In-Stent Thrombosis.

26.

At approximately 5:16 p.m., Dr. Douglas performed an Aspiration Thrombectomy and Plain Old Balloon Angioplasty (POBA) of Acute In-Stent Thrombosis of the mid LAD Xience DES. After a successful operation, Mr. Majeed was transferred back to the CCU and remained there until March 1, 2014.

27.

On or about March 3, 2014, Mr. Majeed was was discharged from Emory Hospital, and began Cardiac Rehabilitation with Emory Hospital and Defendant Atlanta VAMC soon after.

28.

Upon discharge, Mr. Majeed was ultimately diagnosed with STEMI with Acute In-Stent Thrombosis, Ischemic Cardiomyopathy with EF 40%, and Diabetes Mellitus Type 2 (DMII).

## COUNT I
## MEDICAL MALPRACTICE
## DEFENDANT ATLANTA VAMC

29.

Plaintiff incorporates and re-alleges each and every allegation contained in Paragraphs one (1) through twenty-eight (28) above, as if fully set out herein.

30.

Under Count I for Medical Malpractice, Defendant Atlanta VAMC owed to Mr. Majeed a duty to exercise the degree of skill and care employed by medical providers generally, under similar conditions and like surrounding circumstances.

31.

Defendant Atlanta VAMC's employee(s), agent(s), ostensible agent(s), and/or independent contractor(s) deviated from and fell below the degree of skill and care employed by medical professionals and medical providers by omitting and/or failing to provide adequate care and treatment of Mr. Majeed.

32.

Defendant Atlanta VAMC's employee(s), agent(s), ostensible agent(s), and/or independent contractor(s) deviated from and fell below the degree of skill and care employed by medical professionals and medical providers by omitting and/or failing to administer NTG intravenously (IV), after administering NTG sublingually, and after which, Mr. Majeed continued to complain of burning chest pain.

33.

Defendant   Atlanta   VAMC's   employee(s),   agent(s),   ostensible   agent(s),   and/or independent contractor(s) deviated from and fell below the degree of skill and care employed by

medical professionals and medical providers' employee(s), agent(s), ostensible agent(s), and/or independent contractor(s) under similar conditions and like surrounding circumstances. Defendant Atlanta VAMC is vicariously liable for the actions of its employee(s), agent(s), ostensible agent(s), and/or independent contractor(s).

34.

As a direct and proximate result of the negligence of Defendant Atlanta VAMC, Mr. Majeed suffered STEMI with Acute In-Stent Thrombosis, Ischemic Cardiomyopathy with EF 40%, and DMII.

35.

As a direct and proximate cause of the negligence of Defendant Atlanta VAMC, Mr. Majeed suffered severe pain and anguish, incurred medical expenses, and suffered catastrophic and permanent injuries.

36.

O.C.G.A. § 51-1-27 states: "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had."

37.

In accordance with O.C.G.A. § 51-1-27, Defendant Atlanta VAMC had a duty to exercise a reasonable degree of care and skill in providing medical care to Mr. Majeed.

38.

Defendant Atlanta VAMC is vicariously liable in damages to Mr. Majeed due to the actions and/or inactions of Defendant Atlanta VAMC's employee(s), agent(s), ostensible

agent(s), and/or independent contractor(s), who include, but are not limited to, Defendant Basireddy and Defendant Willis.

**COUNT II**
**MEDICAL MALPRACTICE**
**DEFENDANT SATYANARAYANA BASIREDDY**

39.

Plaintiff incorporates and re-alleges each and every allegation contained in Paragraphs one (1) through thirty-eight (38) above, as if fully set out herein.

40.

Under Count II for Medical Malpractice, Defendant Basireddy owed to Mr. Majeed a duty to exercise the degree of skill and care employed by medical doctors generally, under similar conditions and like surrounding circumstances.

41.

Defendant Basireddy deviated from and fell below the degree of skill and care employed by medical doctors, to include, but not limited to, Emergency Medicine Physicians, under similar conditions and like surrounding circumstances.

42.

Defendant Basireddy deviated from and fell below the degree of skill and care employed by medical doctors by failing to follow proper emergency care procedures when Mr. Majeed presented to Defendant Atlanta VAMC with Acute Inferior and Anterior Wall STEMI.

43.

Defendant Basireddy deviated from and fell below the degree of skill and care employed by medical doctors by omitting and/or failing to administer NTG intravenously (IV), after administering NTG sublingually, and after which, Mr. Majeed continued to complain of burning chest pain.

44.

As a direct and proximate result of the negligence of Defendant Basireddy, Mr. Majeed suffered STEMI with Acute In-Stent Thrombosis, Ischemic Cardiomyopathy with EF 40%, and DMII.

45.

As a direct and proximate result of the negligence of Defendant Basireddy, Mr. Majeed suffered severe pain and anguish, incurred medical expenses, and suffered catastrophic and permanent injuries.

46.

O.C.G.A. § 51-1-27 states: "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had."

47.

In accordance with O.C.G.A. § 51-1-27, Defendant Basireddy had a duty to exercise a reasonable degree of care and skill during his medical treatment of Mr. Majeed

48.

Defendant Basireddy is liable in damages to Mr. Majeed, due to his professional negligence.

## COUNT III
## MEDICAL MALPRACTICE
## DEFENDANT WILLIS

49.

Plaintiff incorporates and re-alleges each and every allegation contained in Paragraphs one (1) through forty-eight (48) above, as if fully set out herein.

50.

Under Count II for Medical Malpractice, Defendant Willis owed to Mr. Majeed a duty to exercise the degree of skill and care employed by medical professionals generally, under similar conditions and like surrounding circumstances.

51.

Defendant Willis deviated from and fell below the degree of skill and care employed by medical professionals, to include, but not be limited to, Registered Nurses, under similar conditions and like surrounding circumstances.

52.

Defendant Willis deviated from and fell below the degree of skill and care employed by medical professionals by failing to follow proper emergency care procedures when Mr. Majeed presented to Defendant Atlanta VAMC with Acute Inferior and Anterior Wall STEMI.

53.

Defendant Willis deviated from and fell below the degree of skill and care employed by medical professionals by failing to adequately document medical procedures, including, but not limited to, blood pressure levels after each dose of sublingual NTG.

54.

As a direct and proximate cause of the negligence of Defendant Willis, Mr. Majeed suffered STEMI with Acute In-Stent Thrombosis, Ischemic Cardiomyopathy with EF 40%, and DMII.

55.

As a direct and proximate cause of the negligence of Defendant Willis, Mr. Majeed suffered severe pain and anguish, incurred medical expenses, and suffered catastrophic and permanent injuries.

56.

O.C.G.A. § 51-1-27 states: "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill.  Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had."

57.

In accordance with O.C.G.A. § 51-1-27, Defendant Willis had a duty to exercise a reasonable degree of care and skill during her medical treatment of Mr. Majeed.

58.

Defendant Willis is liable in damages to Mr. Majeed, due to her negligence.

## COUNT IV
## RESPONDEAT SUPERIOR – DEFENDANT ATLANTA VAMC

59.

Plaintiff incorporates and re-alleges each and every allegation contained in Paragraphs one (1) through fifty-eight (58) above, as if fully set out herein.

60.

Under Count IV for Respondeat Superior, on February 28, 2014, Defendant Atlanta VAMC employed or otherwise had an agency/ownership relationship with Defendant Basireddy, and Defendant Willis. The medical care and treatment provided to Mr. Majeed by Defendant Basireddy and Defendant Willis during February 2014 took place during the course and scope of their employment and/or agency relationship with Defendant Atlanta VAMC.

61.

Pursuant to O.C.G.A. § 51-2-2 and/or the doctrine of *respondeat superior*, Defendant Atlanta VAMC is legally and vicariously liable for any professional negligence and/or medical malpractice committed by Defendant Atlanta VAMC's employee(s), agent(s) and/or owner(s) acting within the scope of their employment, agency and/or ownership, including but not limited to, Defendant Basireddy and Defendant Willis, which proximately caused or contributed to the injuries suffered by Mr. Majeed.

62.

As such, Defendant Atlanta VAMC is liable in damages to Mr. Majeed under the theory of *respondeat superior* for the professional negligence of its employee(s), agent(s), and/or owner(s) acting within the scope of their employment.

## COUNT V
## ORDINARY NEGLIGENCE
## DEFENDANT ATLANTA VAMC

63.

Plaintiff incorporates and re-alleges each and every allegation contained in Paragraphs one (1) sixty- two (62) above, as if fully set out herein.

64.

Under Count V for Ordinary Negligence, Defendant Atlanta VAMC owed to Mr. Majeed a degree of care, which is exercised by medical professionals under the same or similar circumstances.  The absence of such a degree of care is Negligence.

65.

Defendant Atlanta VAMC deviated from and fell below this degree of care employed by medical professionals under the same or similar circumstances.

66.

The treatment afforded to Mr. Majeed by Defendant Atlanta VAMC was negligent, due to the fact that Defendant Atlanta VAMC breached its duty to adequately treat and/or care for Mr. Majeed.

67.

Defendant Atlanta VAMC is vicariously liable for the actions of its employees.

68.

Defendant Atlanta VAMC's negligence was a direct and proximate cause of Mr. Majeed's injuries and damages.

69.

As a result of the Defendant Basireddy's negligence, Defendant Atlanta VAMC is vicariously liable in damages to Mr. Majeed.

## COUNT VI
## ORDINARY NEGLIGENCE
## DEFENDANT BASIREDDY

70.

Plaintiff incorporates and re-alleges each and every allegation contained in Paragraphs one (1) through sixty-nine (69) above, as if fully set out herein.

71.

Under Count VI for Ordinary Negligence, Defendant Basireddy owed to Mr. Majeed a degree of care, which is exercised by ordinarily prudent persons under the same or similar circumstances.  The absence of such a degree of care is Professional Negligence.

72.

Defendant Basireddy deviated from and fell below the degree of care employed by ordinarily prudent persons under the same or similar circumstances.

73.

The treatment afforded to Mr. Majeed by Defendant Basireddy was negligent, due to the fact that Defendant Basireddy breached his duty to adequately treat and/or care for Mr. Majeed.

74.

Defendant Basireddy's negligence was a direct and proximate cause of Mr. Majeed's injuries and damages.

75.

As a result of Defendant Basireddy's negligence, he is liable in damages to Mr. Majeed.

## COUNT VII
## ORDINARY NEGLIGENCE
## DEFENDANT NURSE WILLIS

76.

Plaintiff incorporates and re-alleges each and every allegation contained in Paragraphs one (1) through seventy-five (75) above, as if fully set out herein.

77.

Under Count VII for Ordinary Negligence, Defendant Willis owed to Mr. Majeed a degree of care, which is exercised by ordinarily prudent persons under the same or similar circumstances.  The absence of such a degree of care is Negligence.

78.

Defendant Willis deviated from and fell below the degree of care employed by ordinarily prudent persons under the same or similar circumstances.

79.

The treatment afforded to Mr. Majeed by Defendant Willis was negligent, due to the fact that Defendant Willis breached her duty to adequately treat and/or care for Mr. Majeed.

80.

Defendant Willis' negligence was a direct and proximate cause of Mr. Majeed's injuries and damages.

81.

As a result of Defendant Willis' negligence, she is liable in damages to Mr. Majeed.

## COUNT VIII
## ALL OTHER CAUSES OF ACTION

82.

Plaintiff incorporates and re-alleges each and every allegation contained in Paragraphs one (1) through eighty-one (81) above, as if fully set out herein.

83.

Plaintiff reserves the right to amend this Original Complaint with further causes of action as they become available to the Plaintiff against these Defendants and other foreseeable Defendants.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, Mr. Majeed, prays as follows:

(a)  That the Defendants be served with due process;

(b)  That judgment be entered against Defendants in an amount sufficient to compensate for the medical expenses incurred by Mr. Majeed;

(c)  That judgment be entered against Defendants in an amount sufficient to compensate for the emotional, mental, physical, pain, suffering and disability experienced by Mr. Majeed;

(d)  That judgment be entered against Defendants in an amount sufficient to compensate for all Mr. Majeed's lost wages and income;

(e)  That judgment be entered against Defendants for punitive damages;

(f)  That all costs be taxed against Defendants;

(g)  That Plaintiff has trial by jury of twelve (12) on all issue(s) in this action; and

(h)  That Plaintiff has such other and further relief to which this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Ishaq Majeed, demands that all issues of fact in this case be tried before a properly impaneled jury of twelve (12) members.

Respectfully submitted this 26th day of February 2016.

MAHDI ABDUR-RAHMAN
Georgia Bar No.: 728252
*Attorney for Plaintiff*
1230 Peachtree Street, N.E.
Suite 3750
Atlanta, GA 30309
(470) 225-8642 – Telephone
(404) 393-1849 – Facsimile
mahdi@abdurrahmanlaw.com

STATE COURT OF
DEKALB COUNTY, GA.
2/26/2016 1:48:22 PM
E-FILED
BY: Michelle Cheek

18

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| ISHAQ MAJEED, | ) | |
| | ) | |
| **Plaintiff,** | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. ___16A58882E1___ |
| | ) | |
| ATLANTA VETERAN AFFAIRS | ) | |
| MEDICAL CENTER, | ) | |
| SATYANARAYANA | ) | |
| BASIREDDY, M.D., AMBER J. | ) | JURY TRIAL DEMANDED |
| WILLIS, JOHN DOE(S) (1-2), | ) | |
| JANE DOE(S) (1-2), | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## AFFIDAVIT OF SIMON PORTEE, M.D.

**PERSONALLY APPEARED** before the undersigned officer, duly authorized by the laws of the State of Florida to administer oaths, Simon Portee, M.D., who, after first being duly sworn, and states the following:

1.

My name is Simon Portee, M.D., I am over the age of eighteen (18) and competent in all respects to testify to the matters herein.

2.

This Affidavit is given in support of the above-referenced action as an expert witness on behalf of the Plaintiff herein.

3.

I am a physician duly licensed to practice medicine in the State of Georgia. I am a member of the same profession as the professionals whose conduct is at issue in this affidavit.  I have actual professional knowledge and expertise in this area of practice or specialty in which

my opinion is given in this affidavit, as reflected in this affidavit and in my curriculum vitae.[1] I am licensed by an appropriate regulatory agency to practice my profession in the state in which I am practicing and/or teaching in said profession.

4.

I am familiar with the degree of care and skill ordinarily exercised by medical and healthcare professionals generally in the care and treatment of patients such as Mr. Ishaq Majeed ("Mr. Majeed"), as his condition is reflected in the medical records that I have reviewed in connection with providing this affidavit.

5.

I have actively practiced in my areas of specialty, Internal Medicine and Emergency Medicine, for more than sixteen (15) years. The last five (5) years preceding the negligent acts in this case, I have actively practiced and treated patients with sufficient frequency to establish an appropriate level of knowledge in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the medical professionals whose conduct is at issue in this affidavit. For at least three (3) of the last five (5) years immediately preceding the negligent acts in this case, I have supervised, taught or instructed nurses and other medical support staff within Emergency Department(s) of Hospital(s). I have knowledge of the standard of care of those healthcare providers under the circumstances at issue in this case, specifically, myocardial infarction.

6.

The facts in this case upon which I base my opinions are of the type reasonably relied upon by experts in my particular field of Emergency Medicine.

---

[1] Curriculum vitae forthcoming.

7.

The testimony I have given herein is the product of reliable principles and methods, and I have applied those principles and methods reliably to the facts of this case in arriving at the opinions I have expressed herein.

8.

The testimony I have given herein is, in my opinion, based upon sufficient facts or medical records which should be admissible evidence at any hearing or trial in this matter.

9.

In preparing this Affidavit, I have reviewed and relied upon the following medical records of Mr. Majeed, which were provided to me by The Law Office of Mahdi Abdur-Rahman, LLC:

      a.        Progress Notes from Atlanta Veteran Affairs Medical Center;

      b.        Discharge Summaries from Atlanta Veteran Affairs Medical Center;

      c.        Laboratory Results from Atlanta Veteran Affairs Center;

      d.        Cardiology Reports from Emory Hospital;

      e.        Catheterization Laboratory Results from Emory Hospital;

      f.        Electrocardiograms from Emory Hospital; and

      g.        Discharge Summaries from Emory Hospital.[2]

10.

I have personally reviewed Mr. Majeed's records, which reflect the treatment by the agents, and/or apparent agents, and/or ostensible agents, and/or employees of Atlanta Veteran Affairs Medical Center, and any and all other medical doctors specializing in Cardiology,

---

[2] I am not in a position to say that all of the medical records are present, as there appears to be gaps in same.

physicians, physician assistants, registered nurses, LPN(s) and medical technicians that rendered medical care to Mr. Majeed.

11.

Based on my review of the above and my knowledge and experience in dealing with same/similar medical problems and circumstances, I make the following observations and state the following:

12.

On or about February 28, 2014, at approximately 6:00 a.m., Mr. Majeed presented to Atlanta VAMC with complaints of burning chest pain.

13.

At approximately 6:29 a.m., an Electrocardiogram (EKG) was performed on Mr. Majeed. Upon review of the EKG, Dr. Basireddy diagnosed Mr. Majeed with Acute Inferior and Anterior Wall ST-Elevation Myocardial Infarction (STEMI), and notified the Cardiology fellow on call.[3]

14.

At approximately 6:35 a.m., the Cardiology fellow advised Dr. Basireddy to transfer Mr. Majeed to Emory Hospital, as Atlanta VAMC's Catheterization Laboratory would not open until 8:00 a.m. At or about the same time, Mr. Majeed was transferred to Emergency Room 5, and placed on cardiac monitoring, while his vitals were assessed.

15.

At approximately 6:40 a.m., Dr. Basireddy contacted the Emory Hospital transfer service to arrange transfer of the patient. At or about the same time, an Intermittent Needle Therapy (IV/INT) was inserted.

---

[3] At all relevant times, it seemingly appears that Dr. Basireddy was over the treatment and care of Mr. Majeed while in the Emergency Department.

16.

At approximately 6:50 a.m., Amber Willis, RN ("Nurse Willis") administered three (3) 0.4 mg doses of NTG (Nitroglycerin), and one (1) three hundred twenty-five (325) mg dose of Aspirin (ASA) to patient, Mr. Majeed.

17.

At approximately 6:55 a.m., Dr. Basireddy contacted Dr. Michael McDaniel, the Cardiology Attending Physician at Emory Hospital, and Dr. McDaniel accepted the patient.

18.

At approximately 7:00 a.m., Nurse Willis initiated 12.44 units of Heparin drip as ordered.

19.

At approximately 7:10 a.m., Nurse Willis completed a second EKG at patient's bedside, and Dr. Basireddy seemingly reviewed the results.

20.

At approximately 7:13 a.m., Nurse Willis administered two (2) mg of Morphine, as patient continued to complain of chest pain prior to transfer.

21.

At approximately 7:30 a.m., Nurse Willis contacted Nancy Sarpong, RN, at Emory Hospital, and indicated that patient's expected time of arrival was fifteen (15) minutes.

22.

At approximately 7:40 a.m., patient, Mr. Majeed, complained of increased burning in his chest, and Nurse Willis administered a second two (2) mg dose of Morphine, as ordered by Dr. Basireddy.

23.

At approximately 7:48 a.m., Emory transport arrived, and transported Mr. Majeed to Emory Hospital.

24.

At approximately 8:13 a.m., Dr. John Douglas, Jr. performed a Percutaneous Coronary Intervention (PCI) with Drug-Eluting Stent (DES) to the mid Left Anterior Descending (LAD) artery. After a successful operation, Mr. Majeed was transferred to the Critical Care Unit (CCU).

25.

At approximately 5:00 p.m., Mr. Majeed began to experience severe chest pain, and was taken back to the Catheterization Laboratory, where Mr. Majeed was diagnosed with Acute In-Stent Thrombosis.

26.

At approximately 5:16 p.m., Dr. Douglas performed an Aspiration Thrombectomy and Plain Old Balloon Angioplasty (POBA) of Acute In-Stent Thrombosis of the mid LAD Xience DES. After a successful operation, Mr. Majeed was transferred back to the CCU and remained there until March 1, 2014.

27.

On or about March 3, 2014, Mr. Majeed was discharged from Emory Hospital, and began Cardiac Rehabilitation with Emory Hospital and Atlanta VAMC soon after.

28.

Upon discharge, Mr. Majeed was ultimately diagnosed with STEMI with Acute In-Stent Thrombosis, Ischemic Cardiomyopathy with EF 40%, and Diabetes Mellitus Type 2 (DMII).

29.

At all times material hereto, the medical professionals and staff at Atlanta VAMC, including, but not limited to, Dr. Basireddy, Nurse Willis, and any and all other medical

professionals, physician assistants, registered nurses, LPN(s), and medical technicians that rendered care to Mr. Majeed while at Atlanta VAMC owed to Mr. Majeed a duty to exercise that degree of skill and care employed by like medical professionals and other health care providers generally, under similar conditions and like surrounding circumstances, in their care and treatment of Mr. Majeed.

30.

It is my professional opinion, to a reasonable degree of medical certainty, that medical the professionals and staff at Atlanta VAMC acting directly and/or acting through its actual agent(s), and/or apparent agent(s), and or ostensible agent(s), and/or employee(s), including, but not limited to, Dr. Basireddy, and Nurse Willis, failed to exercise the degree of skill and care ordinarily required by medical professionals in general, under like conditions and circumstances. I have identified the following specific acts and/or omissions that fall below the standard of care in support of this opinion:

    a.  Failure to administer Nitroglycerin (NTG) intravenously after administering NTG sublingually, and patient, Mr. Majeed, continued to complain of burning chest pain.[4]

31.

In order to have treated and cared for Mr. Majeed properly under these conditions, the standard of care required of the medical professionals and staff at Atlanta VAMC was as follows:

    a.  Administer NTG intravenously after NTG is administered sublingually, and the patient continues to complain of burning chest pain; and

    b.  Adequately document medical procedures, including, but not limited to, blood pressure levels after each dose of sublingual NTG is administered.

---

[4] It is my understanding that for purposes of Georgia's Pleading Statute, only one deviation of the standard of care is required. I specifically reserve the right to supplement my response/opinions as more information becomes available.

32.

It is my professional opinion, to a reasonable degree of medical certainty, that Dr. Basireddy, acting directly and/or acting through his actual agent(s), and/or apparent agent(s), and or ostensible agent(s), and/or employee(s), failed to exercise the degree of skill and care ordinarily required by medical professionals in general, under like conditions and circumstances. I have identified the following specific acts and/or omissions that fall below the standard of care in support of this opinion:

    a.  Failure to administer Nitroglycerin (NTG) intravenously after administering NTG sublingually, and patient, Mr. Majeed, continued to complain of burning chest pain.[5]

33.

In order to have treated and cared for Mr. Majeed properly under these conditions, the standard of care required of the medical professionals specializing in Emergency Medicine was as follows.

    a.  Administer NTG intravenously after NTG is administered sublingually, and the patient continues to complain of burning chest pain; and

    b.  Adequately document medical procedures, including, but not limited to, blood pressure levels after each dose of sublingual NTG is administered.

34.

It is my professional opinion, to a reasonable degree of medical certainty, that Dr. Basireddy, acting directly and/or acting through his actual agent(s), and/or apparent agent(s), and or ostensible agent(s), and/or employee(s), and any and all other physicians, physician assistants, registered nurses, LPN(s), and medical technicians that rendered care to Mr. Majeed, at all times material hereto, deviated, departed and fell below the applicable standard of care by failing to exercise the above detailed standard of care in treating Mr. Majeed.

---

[5] See previous footnote, number three (3) above.

35.

It is my professional opinion, to a reasonable degree of medical certainty, that Nurse Willis failed to exercise the degree of skill and care ordinarily required by medical professionals in general, under like conditions and circumstances. I have identified the following specific acts and/or omissions that fall below the standard of care in support of this opinion:

    a.  Failure to document medical procedures, including, but not limited to, blood pressure levels after each dose of sublingual NTG.[6]

36.

In order to have treated and cared for Mr. Majeed properly under these conditions, the standard of care required of the medical professionals specializing in Emergency Medicine was as follows.

    a.  Adequately document medical procedures, including, but not limited to, blood pressure levels after each dose of sublingual NTG is administered.[7]

37.

It is my professional opinion, to a reasonable degree of medical certainty, that Nurse Willis, at all times material hereto, deviated, departed and fell below the applicable standard of care by failing to exercise the above detailed standard of care in treating patient, Mr. Majeed.

38.

It is further my opinion, within a reasonable degree of medical certainty, that the aforementioned breaches of standard of care ultimately resulted in medical complications after first surgical procedure.

---

[6] In the records received, vital readings are sparse at best. This is a clear deviation from the standard of care.

[7] While singularly this does not create a harmful situation, it places the patient at risk if, and when other medical professionals have to rely on the patient's medical records.

39.

This affidavit does not contain all of my opinions.  It is not the purpose of this Affidavit to set forth each and every criticism and opinion that I have now or may have in the future regarding the care and treatment rendered to Mr. Majeed by the Defendants, but rather to be in compliance with O.C.G.A. § 9-11-9.1, which I have been told requires that this Affidavit simply set forth at least <u>one</u> negligent act for each person and the factual basis for my opinions. I reserve the right to supplement and amend my opinions.

**FURTHER AFFIANT SAYETH NOT.**

SIMON PORTEE, M.D.

Sworn to and subscribed before me,

This 25 day of  Feb  , 2016.

TONYA WESBEY
NOTARY PUBLIC
DeKalb County
State of Georgia
Notary Public. My Comm. Expires Jan. 4, 2020

STATE COURT OF
DEKALB COUNTY, GA.
2/26/2016 1:48:22 PM
E-FILED
BY: Michelle Cheek